United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 09, 2026
Nathan Ochsner, Clerk

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **Sammy G's District 70 BBQ & Grill, LLC,** | § | **Case No. 25-34839-H5-11** |
| **Debtor** | § | **Chapter 11, Subchapter V** |

### ORDER
### CONFIRMING DEBTOR'S PLAN OF REORGANIZATION
### PURSUANT TO 11 U.S.C. § 1191(b)

The Court held a hearing (the "*Confirmation Hearing*") to consider confirmation of the subchapter V plan of reorganization, ECF No. 48 (the "*Plan*") filed by Sammy G's District 70 BBQ & Grill, LLC (the "*Debtor*"). Having considered the Plan, testimony, declarations, ballot summary, liquidation analysis and other evidence admitted at the Confirmation Hearing, the arguments of counsel and the applicable legal authorities, the Court hereby confirms the Plan and makes and issues the following findings of fact and conclusions of law (the "*Confirmation Order*").[1]

### I.    JURISDICTION, VENUE & CONSTITUTIONAL AUTHORITY

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides "the district courts shall have original and exclusive jurisdiction of all cases under title 11 or arising in or related to cases under title 11." Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[2] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) this proceeding involves primarily core matters as it "concern[s] the administration of the estate and confirmation of a chapter 11 plan."[3] Furthermore, this Court may only hear a case in which venue is proper. Pursuant

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Plan.  All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, unless otherwise indicated.
[2] 28 U.S.C. § 157(a); *see also In re Order of Reference to Bankruptcy Judges*, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[3] 11 U.S.C. § 157(b)(2).

to 28 U.S.C. § 1409(a), "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtor(s) main chapter 11 case is presently pending in this Court and therefore, venue of this proceeding is proper. The pending matter before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order.[4]

## II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52.  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such.  To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.  This Court made certain oral findings and conclusions on the record.  This order supplements those findings and conclusions.  If there is an inconsistency, this Order controls.

On August 20, 2025 (the "*Petition Date*"), the Debtor commenced this bankruptcy case (the "*Case*") by filing a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. The Debtor has continued as a Debtor in possession pursuant to 11 U.S.C. §§ 1108 and 1184

On August 23, 2025, the Office of the United States Trustee filed a Notice of Appointment of Subchapter V Trustee, ECF No. 23, appointing Thomas A. Howley as the subchapter V trustee (the "*Subchapter V Trustee*") pursuant to 11 U.S.C. § 1183(a).

As of the petition date, the Debtor was and continues to be eligible for relief under 11 U.S.C. § 109 and subchapter V of the Bankruptcy Code, and the Debtor is the proper proponent of the Plan under 11 U.S.C. § 1189.

The Debtor complied with 11 U.S.C. §1189(b).  The Plan is dated and identifies the entity

---

[4] Stern v. Marshall, 564 U.S. 462 (2011).

submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Plan and Confirmation Hearing Notice were each transmitted and served in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

The solicitation of the Plan complied with the Bankruptcy Code and Bankruptcy Rules, was appropriate and satisfactory based upon the circumstances of the Case, was conducted in good faith, and was in compliance with 11 U.S.C. §§ 1125, 1126, and all other applicable sections of the Bankruptcy Code and Bankruptcy Rules.

All parties required to be given notice of the bankruptcy, all deadlines in the Case, the Plan, and the Confirmation Hearing have been provided due, proper, timely, and adequate notice and had an opportunity to appear and be heard with respect thereto. No other or further notice is required.

The Plan complies with 11 U.S.C. § 1190 because it contains a brief history of Debtor's business operations; a liquidation analysis; projections with respect to the Debtor's ability to make the payments under the Plan; and the submission of all or a portion of the subchapter V debtor's post-petition income from future earnings to the supervision and control of the trustee as is necessary for the execution of the plan.

The Debtor, as proponent of the Plan, has meet its burden of proving the applicable elements of 11 U.S.C. §§1191(b) by a preponderance of the evidence.

Accordingly, it is therefore

**ORDERED:** that

1.    The Plan of Reorganization filed by the Debtor on November 18, 2025 (ECF No. 48) and attached hereto as **Exhibit A**, is hereby CONFIRMED and approved pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below (the "*Plan*"). Debtor must contribute 60 months of Projected Disposable Income over the life of the Plan (the "*Plan Period*"). The terms of the

Plan are incorporated by reference into and are an integral part of this Confirmation Order. The Plan shall be effective and binding upon entry of this Confirmation Order but subject to the occurrence of the Effective Date.  The terms of the Plan and the Debtor's or Reorganized Debtor's entry into any related documents and performance thereunder, including, without limitation, all documents necessary to implement the transactions contemplated under the Plan, are hereby approved and authorized. The Debtor and reorganized Debtor are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, agreements and other documents contemplated by the Plan.

2.       To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby overruled.

3.       Pursuant to 11 U.S.C. § 1183(c)(2), not later than fourteen (14) days after Debtor's plan is substantially consummated, Debtor must file with the court and serve on the Subchapter V Trustee, the United States Trustee, and all parties in interest notice of such substantial consummation and file such notice with the Clerk of Court.

4.       In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.       Within three (3) calendar days after entry of this order, the Debtor must serve notice of entry of this Confirmation Order ("*Notice*"), pursuant to Bankruptcy Rule 3020(c). The Notice must be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor must thereafter promptly file a copy of such Notice with proof of mailing with the Clerk of Court.

6.       The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are effective as of the entry of this Confirmation Order, but subject to the occurrence of the Effective Date, to the fullest extent of applicable law including,

without limitation, 11 U.S.C. § 1141, the Plan and this Confirmation Order shall be binding on the Debtor(s); all holders of claims and Interests, irrespective of whether they are Impaired under the Plan and whether or not such holders of claims and Interests voted to accept the Plan; and each person or entity acquiring property under the Plan. The Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

7. The following Nonmaterial Plan Modifications are hereby approved:

Notwithstanding anything else to the contrary in the Plan or Confirmation Order, these provisions will govern the treatment of the claims of the Comptroller of Public Accounts (the "Comptroller") and Texas Workforce Commission ("TWC"): (1) nothing provided in the Plan or Confirmation Order shall affect or impair any statutory or common law setoff rights of the Comptroller and TWC in accordance with 11 U.S.C. § 553; (2) nothing provided in the Plan or Confirmation Order shall affect or impair any rights of the Comptroller and TWC to pursue any non-debtor third parties for tax debts or claims, and the Comptroller and TWC specifically opt out of any third party releases, if any; (3) nothing provided in the Plan or Confirmation Order shall be construed to preclude the payment of interest on the Comptroller and TWC's administrative expense tax claims; and (4) to the extent that interest is payable with respect to any administrative expense, priority or secured tax claim of the Comptroller or TWC, the interest rate shall be the statutory interest rate at confirmation.

The Comptroller and TWC shall not be required to file any proof of claim, motion, or request for payment to be paid for any administrative claims. The Comptroller and TWC shall not be required to file any proof of claim, motion, or request for payment to be paid for any obligations that arise or have arisen in the ordinary course of the Debtor's business,

including all post-petition taxes incurred by the Debtor after the Petition Date. All post-petition taxes owed to the Comptroller or TWC shall be paid in full with applicable interest on or before the Effective Date, or as otherwise agreed by the Comptroller or TWC, whichever is the pertinent respective agency. If any post-petition taxes or Administrative Claims owed to the Comptroller or TWC are not due on the Effective Date, then such post-petition taxes or Administrative Claim shall be paid in the ordinary course of business in accordance with applicable law.  Further, Debtor shall pay all delinquent adequate protection payments due and owing to the Comptroller on or before the Effective Date.

All secured or priority tax claims owed to the Comptroller or TWC shall be paid in full either (1) on the Effective Date; (2) in equal monthly installments of principal and interest no later than sixty months after the Petition Date, with the first payment due on the Effective Date; or (3) as otherwise agreed to by the Comptroller or TWC. The priority or secured tax claims of the Comptroller and TWC shall accrue interest at the statutory rate of interest until paid in full.

A failure by the reorganized Debtor or the Subchapter V Trustee, if the Subchapter V trustee is the disbursing agent, to make a payment to the Comptroller or TWC pursuant to the terms of the Plan or comply with the terms herein shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default within ten (10) calendar days after service of written notice of default by email to both the Debtor (email: sammygsellago@yahoo.com) and counsel for the Debtor (email: courtdocs@bakerassociates.net), the Comptroller or TWC may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable non-bankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of an Event of

Page **6** of 14

Default will also be mailed by USPS regular mail to Debtor at 852 Davis Road, League City, Texas 77573, and to counsel for the Debtor at Reese Baker, 950 Echo Lane, Suite 300, Houston, Texas 77024.   The reorganized Debtor shall be allowed to cure up to three (3) defaults.  Upon a fourth default, the Comptroller, or TWC, at its option, may declare the default non-curable and proceed to collect the remainder of the debt. The Comptroller and TWC preserve all available bankruptcy and state law remedies, if any, in the event of default of payment as laid out herein above.

Debtor shall file all delinquent returns due and owing to the Comptroller or TWC on or before Effective date and stay current on filings thereafter. Notwithstanding anything to the contrary in the Plan or this Order, the reorganized Debtor will retain documents for the four-year inspection period set forth in Texas Tax Code § 111.0041(a) (or for any pending audits, the later of four years or the time any and all claim(s) based on such audit are resolved).

8.      The Debtor must make the payments to the Subchapter V Trustee required by the Plan under 11 U.S.C. § 1194(b) on or before the 15th of each month (the "*Deadline*"). After receipt of the plan payments, the Subchapter V Trustee must distribute plan payments in accordance with the terms of this Order and the Plan before the 25th of each month until all required payments have been made. If the Debtor fails to make all required plan payments to the Subchapter V Trustee by the deadline, the Subchapter V Trustee must provide notice to Debtor and Debtor's counsel and request payment within seven (7) calendar days of the notice. If Debtor fails to make the required plan payment to the Subchapter V Trustee within seven (7) calendar days of the notice, the Subchapter V Trustee must file a notice of default with the Clerk of Court.

9.      The Subchapter V Trustee must file, a preliminary report at the conclusion of the six (6) months  from entry of the confirmation order and then for the duration of the period in which the Debtor must tender projected disposable income or equivalent values of property under the confirmed plan as required under § 1191(c)(2) (the "*Non-Consensual Commitment Period*"), a status report on each anniversary date of the entry of the confirmation order which outlines the status of payments made by the Debtor and distributed by the Subchapter V Trustee in the past year and any other post-confirmation action taken toward consummation of the plan and serve that report upon the master mailing list (matrix) as constituted by the Court on the date of service.

10.     Within fourteen (14) calendar days of entry of this Confirmation Order, the Debtor must provide the Subchapter V Trustee with a list of allowed claims, associated account numbers, the amount of such claims, and the correct mailing address for the Subchapter V Trustee to send plan payments. If there are any disputed claims, the Debtor must provide a separate list of such disputed claims and an estimated date of resolution. The Debtor must file a certificate of service with the Clerk of Court indicating that the claim information required by this paragraph has been timely served on the Subchapter V Trustee.

11.     Within sixty (60) days from the Effective Date, unless such date is extended by Order of the Bankruptcy Court after notice and hearing, the Debtor may file with the Bankruptcy Court objections to Claims and Equity Interests and shall serve a copy of each such objection upon the holder of the Claim or Equity Interest to which such objection pertains ("*Disputed or Undetermined Claim*"). Unless arising from an Avoidance Action, any Proof of Claim Filed after the Effective Date shall be of no force and effect and need not be objected to. Any Disputed or Undetermined Claim may be litigated to Final Order. The Debtor may compromise and settle any Disputed or Undetermined Claim without the necessity of any further notice or approval of the

Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of a Disputed or Undetermined Claim after the Effective Date. At the time, and to the extent that a Disputed or Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to distributions under the Plan. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Clai

12.     Except as otherwise provided in the Plan, no distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Subchapter V Trustee must hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Subchapter V Trustee must distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the Subchapter V Trustee must make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

13.     Disbursements may be delivered by the Subchapter V Trustee to (i) the address list provided by the Debtor under paragraph 9; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address delivered to the Subchapter V Trustee. If any distribution to a claimant of an allowed unsecured claim is returned to the Subchapter V Trustee as undeliverable, no further distributions shall be made to such claimant unless and until the Subchapter V Trustee is notified in writing of such claimant's correct mailing address, at which time all currently due distributions must be made to such claimant as soon as practicable. Undeliverable distributions must remain in

the possession of the Subchapter V Trustee until such time as a distribution becomes deliverable and must not be supplemented with any interest, dividends, or other accruals of any kind. If, despite reasonable effort, the Subchapter V Trustee is unable to obtain the information necessary to deliver a distribution within six (6) months following the return of the undeliverable distribution, the Subchapter V Trustee must deposit the amount with the Clerk of the Court in accordance with 11 U.S.C. § 347(a).

14.     The Subchapter V Trustee must file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program.

15.     At the conclusion of the Plan Period and upon completion of Plan payments during such time, the Subchapter V Trustee must file, with the Clerk of Court, a notice of completion of plan payments which documents that all payments of projected disposable income or equivalent values of property by the Debtor under the confirmed plan as required under § 1191(c)(2) have been completed and that all other prerequisites for the entry of an order of discharge pursuant to 11 U.S.C. § 1192 have been fulfilled ("*Notice of Plan Completion*").

16.     Within thirty (30) calendar days of the filing of the Notice of Plan Completion, the Debtor must file a motion for entry of discharge and a motion for final decree.

17.     Debtor must self-calendar a hearing date on all final motions including a motion for final decree.

18.     The Subchapter V Trustee must file a post-confirmation final fee application within fourteen (14) calendar days of the motion for final decree under Fed. R. Bankr. P. 3022, which shall include all compensation received and disclosed in the quarterly reports filed with the Court. All post-confirmation fees paid to the Subchapter V Trustee are subject to refund until approved by a final, non-appealable order.

19.     Upon completion of the Plan, the Subchapter V Trustee must file with the Clerk of Court a Report of No Distribution (NDR) or Final Report (TFR).

20.     After the filing of the Subchapter V Trustee's final report and resolution of any objection thereto, the Subchapter V Trustee will be discharged, the Subchapter V Trustee's bond will be cancelled, and the case will be closed.

21.     All of the Debtor's assets shall be granted, released, assigned, conveyed, transferred, and delivered as of the Effective Date to the Reorganized Debtor pursuant to 11 U.S.C. §§ 1123(a)(5)(B) and 1123(b)(3)(B) and in accordance with the Plan and Confirmation Order, and as of the Effective Date, free and clear of any and all liens, claims, encumbrances, and interests (legal, beneficial, or otherwise) of all other persons and governmental units to the maximum extent contemplated by and permissible under 11 U.S.C. § 1141(c) for the uses and purposes as specified in the Plan and this Confirmation Order. If this case is later converted to a case under chapter 7 of the Bankruptcy Code, all assets of the debtor shall revest in the chapter 7 estate and be subject to administration by a chapter 7 trustee.

22.     The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

23.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute

and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

24.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the provisions of the Plan, evaluate and determine whether to pursue any such retained claims.

25.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if mailed by first class mail on or before the date of distribution provided for in the Plan to the address listed in the creditor's proof of claim filed in this case, or, if no proof of claim is filed, to the creditor's last known mailing address.

26.     As soon as practicable after completion by the Debtor of all payments due within the first 3 years of the plan, or such longer period not to exceed 5 years as the court may fix, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in the plan, except any debt (1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or (2) of the kind specified in 11 U.S.C. § 523(a).

27.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

28.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1127(b) and 1142, and Bankruptcy Rule 3020(d).

29.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

30.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated in the Plan, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control.

[remainder of page intentionally left blank]

31.     This Confirmation Order is a Final Order which shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.

Signed: February 09, 2026

_____
Jeffrey P. Norman
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SAMMY G'S DISTRICT 70** | § | |
| **BBQ & GRILL, LLC** | § | **CASE 25-34839** |
| | § | |
| | § | **Chapter 11, Subchapter V** |
| | § | |

### Debtor's Plan of Reorganization Under Subchapter V Chapter 11

Sammy G's District 70 BBQ & Grill, LLC ("Sammy Gs" or "Debtor") proposes this Plan of Reorganization (the "Plan") pursuant to 11 U.S.C. §§ 1190.

I.   Background

**A.   Description and History of the Debtor's Business**

Debtor operates a restaurant and bar in the Clear Lake area at 4141 E. Nasa Parkway, Suite D, Seabrook, Texas 77586.  The restaurant and bar opened for business in the spring of 2024.  The customers for the restaurant and bar are mainly people in the general area with boats or connected to water activities.

The value of the Debtor's assets is directly connected to an operating restaurant and bar. The values of the assets if a liquidate occurs would probably be much less.

The Debtor is planning on continuing to operate the restaurant and bar and hopefully increasing the revenues and operations. The restaurant and bar are still getting new customers since the restaurant and bar has been open for less than 2 years.

---



Debtor values its assets at approximately $31,582 which includes kitchen equipment, tables and chairs, buildout and leasehold improvements of the current facility, health and operational permits and food and liquor inventory that varies from day to day. The Debtor has no accounts receivable.

Debtor has debts of approximately $276, 200.

## B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as Exhibit 1.

## C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

In order to confirm a plan, the Debtor must show that it will have enough cash over the life of the plan to make the required plan payments and operate the Debtor's business. The projections demonstrate that the Debtor will have sufficient funds to operate its business going forward.

The Debtor has provided projected financial information as Exhibit 1. The projections are based upon current and projected new business. The projections included farming chicken eggs and raising catfish.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

II. <u>Summary of Plan</u>

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay Debtor's creditors from the cash flow generated in the ordinary course of the Debtor's business after confirmation.

This Plan provides for:     four (4) classes of secured claims;

                             one (1) class of unsecured priority federal tax claims

                             one (1) class of unsecured claims, and

                             one (1) class of equity security holders.

Creditors holding allowed claims will receive distributions as set forth in this Plan.

This Plan also provides for the payment of administrative claims.

All creditors should refer to this Plan for information regarding the precise treatment of their claims.

The Debtor may prosecute claims against persons or entities that may owe money to the Debtor. Any recoveries will remain with and be an asset of the reorganized Debtor.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

III. <u>Classification of Claims and Interests</u>

| Class 1 | Class 1 consists of the allowed secured claim of the Texas Workforce Commission for $5,535.48.  The claim is for unemployment taxes. |
|---------|---------------------------------------------------------------------------------------------------------------------------------|



| Class 2 | Class 2 consists of the allowed secured claim of Texas Comptroller of Public Accounts for $39,503.50.  The claim is for sales and use taxes. |
|---|---|
| Class 3 | Class 3 consists of the allowed secured claim of Texas Comptroller of Public Accounts for $23,153.97.  The claim is for mixed beverage taxes. |
| Class 4 | Class 4 consists of the allowed secured claim of Texas Comptroller of Public Accounts for $26,723.41.  The claim is for additional mixed beverage taxes. |
| Class 5 | Class 5 consists of the claim of the Internal Revenue Service estimated at $169,179.87.  No claim has been filed. |
| Class 6 | Class 6 consists of all other non-priority unsecured claims allowed under §502 of the Code. The aggregate amount of Class 6 claims is approximately $23,198.<br><br>The claims in this class consist of the following:<br><br>Gordons Food Service, Inc.    $5,602.16- claim filed<br><br>American Society of Composers, Authors and Publishers –estimated at $200<br><br>Ben E. Keith - estimated at $2,530<br><br>Broadcast Music -estimated at $200<br><br>Comcast – estimated at $630<br><br>Fintech – estimated at $1,440<br><br>Mike Peterson, Sr. – for leasehold costs – estimated at $5,850<br><br>SESAC, LLC estimated at $2,530 |
| Class 7 | Class 7 consists of the equity security holders of the Debtor. |



IV. <u>Treatment of Administrative Expense Claims, Priority Tax Claims, and Court Fees</u>

Under § 1123(a)(1), administrative expense claims are not in classes.

Administrative Expense Claims

Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full in cash on the later of the Effective Date (as hereinafter defined), on the date such claim becomes an allowed claim, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

If the plan is confirmed under section 1191(a), the Debtor will pay post-confirmation fees and expenses incurred by Baker & Associates in the ordinary course of business without the need for Court approval of such fees and expenses. If the plan is confirmed under section 1191(b), the Debtor will pay post-confirmation fees and expenses incurred by Baker & Associates after approval by the bankruptcy court.

Payment to the Subchapter V Trustee – Thomas Howley has been appointed as the Subchapter V Trustee in this case ("Subchapter V Trustee"). Debtor shall pay allowed Subchapter V Trustee fees and expenses as set forth in the projections and budget. If the Subchapter V Trustee does not timely receive the payments set forth in the plan, the Subchapter V Trustee may send written notice by Regular Mail, by email, and by Certified Return Receipt Requested Mail, postage prepaid, to the Debtor and Counsel for the Debtor, and allow Debtor a 30-day period from the date of such written notice to cure such delinquent payments. In the event Debtor fails to cure such delinquent payments within such 30-day period, the Subchapter V Trustee shall be allowed to take

any and all steps necessary to exercise any and all rights available remedies under applicable law. Upon entry of a final order of discharge for the Debtor, this notice requirement shall terminate and the parties shall thereafter be governed by the notice provisions set forth under the laws of the State of Texas.

The subchapter V Trustee fees will be paid as set forth in the projections, subject to the approval of the fees and expenses by the bankruptcy court.

**Other administrative expenses**

**Priority Tax Claims**

The Debtor believes that the Internal Revenue Service ("IRS") is owed approximately $169,180 but no claim has been filed by the IRS. The amount owed to the IRS will be a priority tax claim. The claim shall be paid in no more than five (5) years from the filing of the case or paid no later than August 20, 2030. The claim will be paid at 6% per annum.

**Statutory Fees**

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been paid or will be paid on the Effective Date.

V. <u>Treatment of Claims and Interests Under the Plan</u>

Claims and interests will be treated as follows under this Plan: Filing date of August 4, 2025.

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Texas Workforce Commission | Impaired | Debtor will pay amounts owed to Class 1 of $5,535.48 by no later than August 20, 2030. The claim will be paid approximately equal monthly installments at |



| | | 8.5% per annum interest The Debtor may pre-pay this claim at any time. The claim is secured by the personal property of the Debtor. |
|---|---|---|
| Class 2 – Texas Comptroller | Impaired | Debtor will pay amounts owed to Class 2 of $39,503.50 by no later than August 20, 2030. The claim will be paid approximately equal monthly installments at 8.5% per annum interest The Debtor may pre-pay this claim at any time. The claim is secured by the personal property of the Debtor. |
| Class 3- Texas Comptroller | Impaired | Debtor will pay amounts owed to Class 3 of $23,153.50 by no later than August 20, 2030. The claim will be paid approximately equal monthly installments at 8.5% per annum interest The Debtor may pre-pay this claim at any time. The claim is secured by the personal property of the Debtor. |
| Class 4- Texas Comptroller | Impaired | Debtor will pay amounts owed to Class 4 of $26,723.41 by no later than August 20, 2030. The claim will be paid approximately equal monthly installments at 8.5% per annum interest The Debtor may pre-pay this claim at any time. The claim is secured by the personal property of the Debtor. |
| Class 5- Internal Revenue Service | Impaired | Debtor will pay amounts owed to Class 5 of $169,179.87 by no later than August 20, 2030. The claim will be paid approximately equal monthly installments at 6% per annum interest The Debtor may pre-pay this claim at any time. The claim is secured by the personal property of the Debtor. |
| Class 6 – Unsecured Non-Priority Claims | Impaired | The Debtor will pay the projected disposable income in the amount as set forth on the projections for a period of sixty (60) months following the Effective Date to creditors in this class with allowed claims in the amount set forth on the projections with this plan. Debtor may pay these amounts in quarterly distributions. The plan provides for payment of 100% |

| | | of the claims listed above in Class 6. |
|---|---|---|
| Class 7 | Unimpaired | The equity security holders will retain the interest in the Debtor. |

**Definitions:**

**Disposable Income (from section 1191(d) of the Bankruptcy Code)** — The term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended—
**(1)** for—
**(A)** the maintenance or support of the debtor or a dependent of the debtor; or
**(B)** a domestic support obligation that first becomes payable after the date of the filing of the petition; or
**(2)** for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

Items (1)(A) and (B) are not applicable to a case for an entity. Disposable income shall be the amount as set forth in the projections.

**Provisions Applicable to the Taxing Entities**

<u>Classes 1, 2, 3 and 4</u>– Texas Workforce Commission and Texas Comptroller.

Debtor will pay the amounts for Classes 1, 2 and 3 in full within sixty (60) months of the Petition Date. The claim will be paid in approximate equal monthly installments 8.5% per annum interest, accruing from the Petition Date until paid in full. All prepetition and post-petition tax liens securing such ad valorem taxes are retained until such taxes are paid in full. Debtor will pay the 2025 taxes, as final billed, in accordance with the Texas Tax Code. The Debtor will pay all ongoing post-petition taxes prior to delinquency as required under applicable non-bankruptcy law, otherwise be subject to all collection actions under such law, without further notice or order from the Bankruptcy Court. The Debtor may pre-pay this claim at any time.



**Funds for Payment of Administrative Expense Claims and Unsecured Claims.**

The Debtor will pay the administrative expenses and the other classes as set forth on the projections. The Debtor may prepay administrative expenses if the Debtor has sufficient funds to make such payments.

VI.    <u>Provisions Applicable to All Classes-Default</u>

If the reorganized Debtor fails to timely make the required plan payments to any of the creditors, the reorganized Debtor will be considered to have defaulted under the Plan as to such creditor. If the reorganized Debtor defaults under the Plan as to a creditor, then such creditor may send a written notice of the default (a "Default Notice") to the reorganized Debtor and counsel for the Debtor by Regular Mail, by email, and by Certified Mail Return Receipt requested, postage prepaid as follows: email for the Debtor: grizzaffis@yahoo.com; email for counsel for the Debtor: courtdocs@bakerassociates.net; address for Debtor is: 852 Davis Road, League City, Texas 77573 and address for counsel for the Debtor is: 950 Echo Lane, Ste 300, Houston, Texas 77024. If the reorganized Debtor does not cure the default within 30 days after receiving the written Default Notice, such creditor with a default may proceed to collect all amounts owed pursuant to state law without further recourse to the Bankruptcy Court.

**Bar Date and Payments**

**The Debtor will only pay creditors that are listed in the schedules of the Debtor as undisputed, non-contingent, and liquidated. If a creditor is listed as disputed, contingent, or unliquidated, then the creditor must file a claim by the bar date. If no claim is filed by the bar date, then no payment will be made to such creditor, but the discharge provided in this Plan and the bankruptcy code will discharge the debt of such creditor. Creditors whose**

**claims are listed as disputed, contingent, or unliquidated will receive no distribution unless such creditor files a claim and the claim is allowed.** Even if a creditor files a claim, the Debtor may still dispute the claim.

VII.   Provisions for Subchapter V Chapter 11 Trustee and Confirmation under section 1191(b)

The Debtor requests consent to act as the disbursing agent if the plan is confirmed under section 1191(b).

**Quarterly Financial Reporting**. If the plan is confirmed under section 1191(b), then until the Debtor has completed all payments under this Plan, the reorganized Debtor shall file with the Court and provide to the Subchapter V Trustee no later than 21 days after the end of each quarter, post-confirmation quarterly financial reports (the "Quarterly Reports") for each quarter (or portion thereof) of the Plan term. The Quarterly Reports shall: (i) be generated by the Debtor's management or an accounting or finance professional retained by the Debtor; and (ii) contain the information required by the U.S. Trustee's forms and office.

**Tax Returns**. If the plan is confirmed under section 1191(b), then until the Debtor has completed all payments under this Plan, Debtor shall timely file all tax returns and make all tax payments and deposits, if any, when due. For each tax return that becomes due after entry of the order confirming the Plan but before the Plan is substantially consummated, Debtor shall, within fourteen (14) days of filing the return, provide the Subchapter V Trustee with a complete copy of the tax return, including all schedules and attachments.

**Reorganized Debtor's Remittance**. If the plan is confirmed under section 1191(b) and if the Debtor is not the disbursing agent, then the Debtor shall remit to the Subchapter V Trustee the

funds for the payments of the allowed claims in this plan. Payments of administrative claims under this Plan shall be made in a manner that is mutually agreeable by and between the Debtor, administrative claimants, and the Subchapter V Trustee. The Reorganized Debtor shall promptly contact the Subchapter V Trustee regarding the disposition of any checks by Reorganized Debtor made payable to the Subchapter V Trustee but not negotiated.   The Debtor shall calculate the amounts to be paid to creditors in this plan and shall provide such calculations to the Subchapter V Trustee at approximately the same time as the funds are delivered to the Subchapter V Trustee.

**Distributions to Creditors.** If the plan is confirmed under section 1191(b), then distributions to allowed claims will be made in accordance with the payment calculations provided by the Debtor. The Subchapter V Trustee is not responsible for calculating or correcting the payment amounts due under the Plan.

**Disbursing Agent.** The Debtor shall serve as the disbursing agent if the plan is confirmed under 1191(a).

In the event the plan is confirmed under 1191(b), the Debtor requests a waiver of the requirement that the Subchapter V Trustee serve as the disbursing agent.   The Debtor has approximately 12 creditors in total and can manage and pay the creditors as necessary.  In the event the waiver is not granted, the Subchapter V Trustee shall serve as disbursing agent for the creditors and shall be discharged upon completion of the final disbursement to all the creditors. Funds from any disbursement check where the check remains unnegotiated for more than 60 days, may be redistributed *pro rata* to other unsecured creditors, as provided for under the Plan, or may be placed with this Court's unclaimed funds register pursuant to 28 U.S.C. § 2042, at the discretion of the

Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent). The Reorganized Debtor will have the right to pursue the recovery of any disbursements made on account of a claim which is subsequently withdrawn and/or satisfied.

If the plan is confirmed under section 1191(b) and the Debtor is not authorized to be the disbursing agent, the following shall also apply:

a.  The Subchapter V Trustee shall be the disbursing agent for all distributions made under the plan. The Debtor shall be required to pay a post-confirmation retainer to the Subchapter V Trustee of $500 monthly.  As disbursing agent, the Trustee may pay his post-confirmation fees without further order of the Court on 14-days negative notice. The Subchapter V Trustee may file a Notice Regarding Payment of Fees, which shall include fees and expenses incurred by the trustee on a quarterly basis. If no party objects to the notice, after 14 days, the Subchapter V Trustee may pay the fees and expenses. If a party in interest does object, the Court will set a hearing to determine whether the fees and expenses incurred by the Subchapter V Trustee are reasonable and necessary;

b. Payments by the Debtor to the Subchapter V Trustee are due by the 15th of the month, with the first plan payment due on the 15th of the month following confirmation. The Subchapter V Trustee will begin making distributions under the plan within 60 days of plan confirmation;

c. The payments to unsecured creditors will be escrowed by the Subchapter V Trustee or the Debtor and paid on at least a calendar quarterly basis;

*SCG*

d. The Debtor shall provide the Subchapter V Trustee access to information and access otherwise to fulfill all duties pursuant to §1183;

e. Default remedies under the Plan include liquidation and/or removal of the Debtor, and the Court shall retain jurisdiction to enforce and interpret the Plan; and

f. Any modification of plan payments must be filed and noticed by the Debtor or by the Subchapter V Trustee.

If the plan is confirmed under 1191(a) or is confirmed under 1191(b) and Debtor is allowed to serve as the disbursing agent, the payments to unsecured creditors will be escrowed by the Debtor and paid on at least a calendar quarterly basis. The first plan payment will be due on the 15th of the month following confirmation.

The Debtor will be deemed to have met its payment obligations upon payment of the classes of claims as set forth herein.

If the plan is confirmed under 1191(a), the Subchapter V Trustee shall be discharged upon Substantial Consummation of the Plan. If the plan is confirmed under 1191(b), the Subchapter V Trustee shall be discharged upon Debtor's discharge under 1192. In either case, the Subchapter V Trustee shall timely account for any money received and file the required final report.

If the plan is confirmed under section 1191(a), no further reports must be filed by the Debtor.

**Notices**. The Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent) may limit notice of any and all reports, document, pleading or other filing related to this case to those parties directly affected and to those interested parties which have filed a notice of appearance or proofs of claim, as necessary. The Debtor (or the Subchapter V Trustee if the Debtor is not the disbursing agent) shall be under no obligation to serve parties which are neither affected by any report, document, pleading or other filing or have made no appearance whatsoever before this Court.

**Payments and Distributions on Disputed Claims**. Except as otherwise provided in the Plan, no partial Plan Payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. For purposes of clarity, each class's claimants will not be entitled to a distribution until all claims within the applicable class are final. Unless otherwise agreed to by the reorganized Debtor or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a distribution until such dispute is resolved by settlement or Final Order. The provisions of this section are not intended to restrict payment of any unclassified claims which are not disputed.

VIII.        <u>Subchapter V Trustee Obligations.</u>

**(a) Obligations Related to the Pursuit of Causes of Action**. The Subchapter V Trustee shall not have any right or obligation to pursue and/or manage the reorganized Debtor's pursuit of Causes of Action. Rather, the pursuit and management of Causes of Action shall be coordinated by the reorganized Debtor and the attorney retained by the reorganized Debtor to pursue Causes of

Action, if any.  Causes of action of the Debtor may be pursued by the Debtor without any further need for court approval or approval of the Subchapter V Trustee.

**(b) Administration of the Estate.** If the plan is confirmed under section 1191(b) and the Debtor is not the disbursing agent, then the Subchapter V Trustee shall file all reports required by the United States Trustee in the manner prescribed by the United States Trustee Program. Upon discharge of the Subchapter V Trustee, the Subchapter V Trustee shall file his final report and seek a discharge of his duties as Subchapter V Trustee.

**Retention of Jurisdiction**. The Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan and pursuant to the Order of Confirmation, specifically including, but not limited to, the jurisdiction to determine all objections that have heretofore been or may be filed to claims of creditors; to fix and award all compensation to parties who may be so entitled; to hear and determine all questions concerning the assets or property of the debtor, including any questions relating to any sums of money, services, or property due to the debtor; and determine all matters of any nature or type necessary or appropriate to carry out the Plan.

IX.     <u>Allowance and Disallowance of Claims</u>

**Disputed Claims**

A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, as to which, either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

---

As of the submission of this plan, three (3) claims have been filed. The Debtor reserves the right to dispute any claims filed by any creditors for up to forty-five (45) days after the Effective Date.

**Distribution on a Disputed Claim**

No distribution will be made on a disputed claim unless such claim is allowed by a final non-appealable order. The Debtor will only pay on allowed claims.

**Settlement of Disputed Claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

X.   Provisions for Executory Contracts and Unexpired Leases

The Debtor assumes the following executory contracts and unexpired leases as of the Effective Date:

- Internet service, cell phone service

- Any contracts for provision of services including contracts with Aero Ice and Clover

- The current lease between Mike Peterson, Sr. and the Debtor will be continued for an additional five years at the current rate and with the same terms and conditions.

Except for executory contracts and unexpired leases that have been assumed under this Plan or by order of the court before the Effective Date, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the

Effective Date.

A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

XI.   <u>Means for Implementation of the Plan</u>

The Debtor will retain the property of the bankruptcy estate. The Debtor will make the payments as set forth in the Projections to either the creditors or to the Subchapter V Trustee.

The officers and directors of the Debtor are anticipated to remain the same after the Effective Date.  Samuel Grizzaffi will continue as the sole owner and President of the Debtor after confirmation.

X.   <u>General Provisions</u>

**Definitions and Rules of Construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**Effective Date**

The effective date ("Effective Date") of this Plan is the date on which the confirmation order becomes a final order no longer subject to appeal. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Binding Effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Controlling Effect**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Retention of Jurisdiction**

The Bankruptcy Court will retain exclusive jurisdiction of the case after the confirmation date with respect to the parties to, and the subject matter of, this Plan and the claims, applications, orders, damages, and other events as described in the Plan.

XI.    <u>Discharge</u>

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in

§ 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt: (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, on the first date on which the Administrative Claims, priority claims, and allowed claims in all classes have each been paid in full in accordance with the terms of this Plan. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

[remainder of page intentional left blank]

If the Debtor's Plan is confirmed under § 1191(b), upon payment by the Debtor of the Administrative Claims, priority claims, and allowed claims in all classes in accordance with the terms of this Plan, the Debtor may apply for the entry of an order of discharge and upon confirmation that the payments have been made, the Bankruptcy Court shall enter an order of discharge under section 1192.

**Attachments:**

1. Liquidation Analysis
2. Projections

Dated: November 18, 2025

*/s/Samuel Grizzaffi*
Samuel Grizzaffi
President

ATTORNEY FOR THE DEBTOR:
Reese Baker
TX Bar No. 01587700
Nikie Marie López-Pagán
TX Bar No. 24090233
Baker & Associates
950 Echo Lane, Ste. 300
Houston, Texas 77024
(713) 979-2279
(713) 869-9100 Fax

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **SAMMY G'S DISTRICT 70 BBQ & GRILL, LLC** | § | **Case No. 25-34839** |
| | § | |
| **Debtor** | § | **Subchapter V** |

## <u>LIQUIDATION ANALYSIS</u>

 Section 1129(a)(7)(A) of the Bankruptcy Code requires that each holder of a claim must either accept the plan or receive payments or property with a value of at least as much as would be available in a chapter 7 liquidation of the Debtor(s) assets. As set forth in the Plan, each holder of a secured claim is either receiving its collateral or is being paid the value of its claim, with interest. This treatment satisfies the liquidation test under § 1129(a)(7)(A). Holders of priority claims are paid in full, with interest. This also satisfies the requirements of § 1129(a)(7).

 Holders of general unsecured claims are forecast to receive a dividend of 100% of their allowed claim. The Debtor(s) has estimated that its assets, after payment of liens would generate the following amounts in a chapter 7 liquidation:

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|---|
| Food inventory | $500 | $258,437 | 0 | $  0.00 | Debtor |
| Liquor inventory | $500 | $258,437 | 0 | $  0.00 | Debtor |
| Paper goods | $200 | $258,437 | 0 | $  0.00 | Debtor |
| Office furniture | $750 | $258,437 | 0 | $  0.00 | Debtor |
| Kitchen and restaurant equipment | $10,000 | $258,437 | 0 | $  0.00 | Debtor |
| Computer, printer, software | $350 | $258,437 | 0 | $  0.00 | Debtor |
| Picnic tables and signage | $500 | $258,437 | 0 | $  0.00 | Debtor |
| Web site | $50 | $258,437 | 0 | $  0.00 | Debtor |
| Liquor license | 0 | $258,437 | 0 | $  0.00 | Debtor |
| Food service permit | 0 | $258,437 | 0 | $  0.00 | Debtor |
| | | | | $  0.00 | |
| | | | | $  0.00 | |

| Description of Asset | Estimated Liquidation Value | Amount of Debt Secured by Liens Against this Asset | Amount Claimed Exempt | Value Available to Estate in Liquidation | Basis of Estimate of Value |
|---|---|---|---|---|---|
| **TOTAL** | | | | **$  0.00** | |

In a chapter 7 liquidation, the estimated liquidation value of $0 would be applied to the chapter 7 Trustee's fees and expenses and then to priority claims.  This would produce the following:

| | |
|---|---|
| Liquidation Value | $  0.00 |
| Estimated Trustee's Fees and expenses | $5,000 |
| Estimated priority claims | $258,437 |
| Total available for holders of unsecured claims | $  0.00 |
| Estimated unsecured claims | $17,720 |
| Estimated percentage recovery in liquidation | 0% |

Because the plan forecasts to pay holders of unsecured claims % of the amount of their claims and a chapter 7 liquidation is forecast to pay only 0%, this Plan satisfies the liquidation test as to holders of unsecured claims.

Dated: November 17, 2025

Respectfully submitted

*/s/ Reese W. Baker*
Attorney For Debtor

Debtor Name_____                    Form 11-11                                     Case No. _____

**United States Bankruptcy Court**
**Southern District of Texas**
_____ Division

| Ordinary Income/Expenses | | Months 1-12 | Months 13-24 | Months 25-36 | Months 37-48 | Months 49-60 | Total |
|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | |
| Total Revenue | | $ 825,000.00 | $ 852,000.00 | $ 860,000.00 | $ 870,000.00 | $ 900,000.00 | $ 4,307,000.00 |
| | | | | | | | |
| **Expenses** | | | | | | | |
| Employee Payroll | | $ 280,500.00 | $ 289,680.00 | $ 292,400.00 | $ 295,800.00 | $ 306,000.00 | $ 1,464,380.00 |
| Payroll Taxes | | $ 37,125.00 | $ 38,340.00 | $ 38,700.00 | $ 38,700.00 | $ 40,500.00 | $ 193,365.00 |
| Office Lease/Bldg Payment | | $ 24,000.00 | $ 25,000.00 | $ 26,500.00 | $ 26,500.00 | $ 26,500.00 | $ 128,500.00 |
| Utilities | | $ 15,500.00 | $ 16,000.00 | $ 16,500.00 | $ 16,750.00 | $ 17,000.00 | $ 81,750.00 |
| Inventory | | $ 247,500.00 | $ 255,600.00 | $ 258,000.00 | $ 261,000.00 | $ 270,000.00 | $ 1,292,100.00 |
| Gross Sales Tax | | $ 60,000.00 | $ 65,000.00 | $ 70,000.00 | $ 70,000.00 | $ 70,000.00 | $ 335,000.00 |
| Insurance | | $ 19,200.00 | $ 19,500.00 | $ 19,700.00 | $ 20,000.00 | $ 21,000.00 | $ 99,400.00 |
| Bank Service Charges | | $ 22,275.00 | $ 23,004.00 | $ 23,220.00 | $ 23,220.00 | $ 24,300.00 | $ 116,019.00 |
| Telephone /Internet | | $ 8,400.00 | $ 8,500.00 | $ 8,700.00 | $ 8,800.00 | $ 9,000.00 | $ 43,400.00 |
| Supplies | | $ 1,500.00 | $ 1,600.00 | $ 1,700.00 | $ 1,700.00 | $ 1,700.00 | $ 8,200.00 |
| Computer & Software | | $ 4,000.00 | $ 4,000.00 | $ 4,100.00 | $ 4,150.00 | $ 4,150.00 | $ 20,400.00 |
| Dues & Subscriptions | | $ 250.00 | $ 250.00 | $ 250.00 | $ 275.00 | $ 275.00 | $ 1,300.00 |
| Legal Fees | | $ 20,000.00 | $ 20,000.00 | $ 10,000.00 | $ 7,500.00 | $ 7,500.00 | $ 65,000.00 |
| Trash | | $ 1,800.00 | $ 1,800.00 | $ 1,900.00 | $ 1,900.00 | $ 1,900.00 | $ 9,300.00 |
| CPA Fees | | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 25,000.00 |
| Subchapter V Trusttee's Fees | | $ 12,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 36,000.00 |
| **Total Expenses:** | | $ (759,050.00) | $ (779,274.00) | $ (782,670.00) | $ (787,295.00) | $ (810,825.00) | $ (3,919,114.00) |
| **Net Operating Income:** | | $ 65,950.00 | $ 72,726.00 | $ 77,330.00 | $ 82,705.00 | $ 89,175.00 | $ 387,886.00 |
| **Plan Payments** | | | | | | | |
| **Priority Tax Claims** | | | | | | | |
| **Class 1:** Texas Workforce Commission-$5,535.48 | $ 113.56 | $ 1,362.72 | 1,362.72 | 1,362.72 | 1,362.72 | 1,362.72 | 6,813.60 |
| **Class 2:** Texas Comptroller-$39,503.50 | 810.47 | $ 9,725.64 | 9,725.64 | 9,725.64 | 9,725.64 | 9,725.64 | 48,628.20 |
| **Class 3:** Texas Comptroller-$23,153.97 | 475.05 | $ 5,700.60 | 5,700.60 | 5,700.60 | 5,700.60 | 5,700.60 | 28,503.00 |
| **Class 4:** Texas Comptroller-$26,723.41 | 548.27 | $ 6,579.24 | 6,579.24 | 6,579.24 | 6,579.24 | 6,579.24 | 32,896.20 |
| **Class 5:** IRS-$169,179.87 | 3,270.70 | $ 39,248.40 | 39,248.40 | 39,248.40 | 39,248.40 | 39,248.40 | 196,242.00 |
| | | | | | | | |
| **Secured Claims- None** | | | | | | | |
| | | | | | | | |
| **Allowed General Unsecured Claims** | | | | | | | |
| | | | | | | | |
| **Class 6:** General Unsecured Payments | $ 4,600.00 | $ 1,500.00 | 4,600.00 | 4,800.00 | 5,650.00 | 6,650.00 | 23,200.00 |
| | | | | | | | |
| **Total: Annual Plan Payments:** | | $ 64,116.60 | $ 67,216.60 | $ 67,416.60 | $ 68,266.60 | $ 69,266.60 | $ 336,283.00 |
| **Net Profit after Plan Payments:** | | $ 1,833.40 | $ 5,509.40 | $ 9,913.40 | $ 14,438.40 | $ 19,908.40 | $ 51,603.00 |

Date:  November 18, 2025          /s/_____
                                  Samuel Grizzaffi